(No. 39229.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* FRANK COSTA, Appellant.

*Opinion filed September 29, 1967.*

Ward, J., took no part.

James E. Higgins, of Wilmette, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

A jury found the defendant, Frank Costa, guilty of the murder of William Korenchik, and he was sentenced to imprisonment for a term of not less than twenty-five years nor more than fifty years. His first contention on this appeal is that statements which he gave to a police officer and to an assistant State's Attorney should have been excluded on constitutional grounds. Our disposition of that contention makes it unnecessary to consider the other grounds upon which reversal is sought.

William Korenchik died of cerebral injuries inflicted by a blunt instrument. His body, bound and gagged, was found in his apartment on September 7, 1963. The defendant's fingerprints were found in the apartment. The janitor testified that he saw the defendant in the building at 6 A.M. on September 5, 1963, and that when he asked the defend-

ant where he was going, the defendant replied: "To Koren-chik * * * He told me to come over to see him early, he wanted to take me out to give me a job." An acquaint-ance of the defendant testified that on September 27, 1963, the defendant telephoned him from Los Angeles, California, stated that he thought he had killed someone named Bill, and asked how long fingerprints would last. When the de-fendant was arrested in Mills City, Montana, he had with him a suitcase and a painting which had belonged to the deceased. He was brought back to Chicago on October 31, 1963, by Chicago police officers, and on that day he made the statements in question.

He said that he had met Korenchik in a bar and ac-companied him to his apartment when the bar closed. Both men continued drinking. Korenchik offered the defendant thirty dollars to engage in sexual acts; defendant agreed, accepted that amount in traveler's checks and then attempted to leave. When Korenchik tried to stop him a fight ensued in which the defendant overcame Korenchik, tied him up and took some of his property. The defendant admitted striking Korenchik with a barbell in the course of the fight.

The case came on for trial on November 10, 1964, and before the trial commenced the defendant's attorney orally moved for a hearing on the admissibility of the statements, referring to "recent decisions of the United States Supreme Court, especially a very recent one entitled *Escobedo* v. *Illinois* * * *." The assistant State's Attorney objected on the ground that the statute required that a defendant's motion challenging the voluntariness of a confession be made in writing. The defendant's attorney replied that he was not challenging the voluntariness of the statements. The trial judge then read aloud section 114—11 of the Code of Criminal Procedure, which provides in part:

"(a) Prior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary.

"(b) The motion shall be in writing and state facts showing wherein the confession is involuntary.

"(c) If the allegations of the motion state facts which, if true, show that the confession was not voluntarily made the court shall conduct a hearing into the merits of the motion." Ill. Rev. Stat. 1963, chap. 38, par. 114—11.

The defendant's attorney stated that "as a result of the progress made in the law the statute is not applicable and it is void, and it is not in keeping with the constitution of Illinois and the United States. * * * It is not up to date, it is not broad enough." The judge then denied the motion for a hearing on the admissibility of the statements. The attorney requested five minutes to prepare a written motion. The request was denied. The defendant Costa then said that he had a written motion but "they wouldn't let me bring it over." The judge stated: "I don't pay any attention to what clients say", and ordered the trial to proceed.

No further objection was made when the statements were offered in evidence. Thereafter, when the defendant took the stand, he testified that before he made the statements he told the officers that he wanted to call a lawyer or his relative, but that he was told "that everything was all right * * * and if I would give them a statement that they would try to do what they could for me in court, charge me with involuntary manslaughter." He did not see a lawyer or a relative before he made the statements. This testimony was not refuted.

We need not consider the serious problem that would arise if a defendant in a criminal case was prevented from bringing to the courtroom a document related to his defense, for in our opinion the attorney's oral request for a hearing, his citation of *Escobedo* and his reference to other "recent decisions" were sufficient to require a preliminary hearing.

It is difficult to determine from the record the precise ground upon which the hearing was denied. The ruling may have been based in part on the assumption that a pre-

liminary hearing is required only when the objection to admissibility is that the statement was "involuntary" in the sense that it was the product of coercion or improper inducement. The defendant's attorney apparently so understood the ruling. But the principle that underlies *Jackson* v. *Denno*, (1964) 378 U.S. 368, 12 L. Ed. 2d 908, also requires a preliminary hearing when the objection is based upon the standards of admissibility prescribed by *Escobedo* v. *Illinois*, (1964) 378 U.S. 478, 12 L. Ed. 2d 977, *Massiah* v. *United States*, (1964) 377 U.S. 201, 12 L. Ed. 2d 246, and more recently *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 16 L. Ed. 2d 694. These standards go beyond what has been considered "involuntary in traditional terms." 384 U.S. at 457, 16 L. Ed. 2d at 713.

It may be that the trial judge regarded the statutory term "involuntary" as including questions arising under *Escobedo* and *Massiah*, but denied a preliminary hearing because no written motion was presented. If the ruling rested upon this ground, we are of the opinion that a short continuance should have been granted so that a written motion could be prepared. Whatever the reasons that prompted the ruling, its result is that the defendant was denied an opportunity for the hearing required by *Jackson* v. *Denno*, (1964) 378 U.S. 368, 12 L. Ed. 2d 908. See also, *Blackburn* v. *Alabama*, (1960) 361 U.S. 199, 209-10, 4 L. Ed. 2d 242, 250; *People* v. *McGuire*, 35 Ill.2d 219, 228-29.

Article 114 of the Code of Criminal Procedure, which became effective January 1, 1964, deals with "Pre-trial Motions." The drafting committee's introductory comments to that Article state that "the primary guides in this area are constitutional ones. * * * With these guides in mind, the Committee has attempted to provide a uniform and efficient method of ensuring these rights to the accused prior to trial without prejudice to the State." (Committee Comments to Article 114.) If section 114—11 is applied literally, and relevant constitutional requirements are not read

into it, serious difficulties will result. The word "voluntary", for example, has become a word of art in a constitutional sense, and the references in section 114—11 to an "involuntary" confession and to a confession "not voluntarily made" must be read as embracing the constitutional standards that govern admissibility. Similarly, the word "confession" must be read to include both inculpatory and exculpatory statements. See *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 476-7, 16 L. Ed. 2d 694, 725; *People* v. *Lefler*, (1967) *post*, p. 216.

The fact that in the case before us the defendant's attorney did not object to the admission of the statements when they were formally offered in evidence, can not, we think, fairly be interpreted as a conscious waiver of the right to a preliminary hearing. His request for a preliminary hearing had been made and rejected. The defendant's subsequent uncontradicted testimony as to his request for a lawyer prior to his interrogation falls squarely within the rule laid down in *Escobedo* v. *Illinois*. If no more was shown, we would consider whether, because of the way the trial developed, we should remand for a hearing on voluntariness. See *People* v. *Jackson*, (1964) 31 Ill.2d 408; *People* v. *McGuire*, (1966) 35 Ill.2d 219.

But the record also shows a violation of *Massiah* v. *United States*, (1964) 377 U.S. 201, 12 L. Ed. 246, which held that a defendant's constitutional right to counsel was denied when his own incriminating words, which Federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel, were admitted in evidence at his trial. (See Comment, (1965) 32 U. Chi. L. Rev. 560, 566.) This holding has been applied to State cases. See *McLeod* v. *Ohio*, (1965) 381 U.S. 356, 14 L. Ed. 2d 682; *People* v. *Halstrom*, (1966) 34 Ill.2d 20, 22.

Both *Massiah* and *Halstrom* involved statements made after indictment, but the principle upon which they rest

applies equally to this case, in which the statements were made after the defendant had been extradited from Montana and brought back to Illinois. The Uniform Extradition Act, in effect in both States, provides that the requisition of the demanding State be accompanied by a copy "of an indictment found or by information supported by affidavit * * * or by a copy of an affidavit made before a magistrate * * *. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime * * *." (Ill. Rev. Stat. 1963, chap. 60, par. 20.) When the defendant in this case was interrogated, the inquiry had passed beyond the stage at which suspicion had begun to focus on him. (See *Escobedo* v. *Illinois*, 378 U.S. at 490-91, 12 L. Ed. 2d at 986.) He had been substantially charged with the crime, and his subsequent statements "secured while defendant was not represented by counsel and had not knowingly waived his right thereto" were inadmissible. *People* v. *Halstrom*, 34 Ill.2d at 23.

The judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. Justice Ward took no part in the consideration or decision of this case.