THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LUDDIE WILLIAMS, Defendant-Appellant.

First District (5th Division)    No. 79-2094

Opinion filed May 8, 1981.

Edward M. Genson, of Chicago (Jeffrey B. Steinback, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Iris Sholder, and Dean N. Bastounes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendant was convicted of theft and was sentenced to four years imprisonment. On appeal he contends that the conviction should be reversed because of alleged violations of Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)(ii)), and, further, that the State's evidence was insufficient to prove guilt beyond a reasonable doubt.

Complainant Barry Kallick was in his store at 6434 S. Halsted on September 27, 1978, when he saw his 1978 Lincoln Mark V being driven out of the lot where it had been parked. Kallick flagged down a passing squad car, explained to Officer Gyle Reece that his car was being stolen, got into the back seat, and Reece chased the Lincoln. The pursuers disagreed, at trial, about the precise route of the chase, though Kallick testified that he had never been involved in a police chase before and he was scared. The defense does not dispute that the Lincoln was abandoned at 66th Place, just east of Parnell.

Reece testified that, at the end of the chase, he saw defendant partially seated in the car, with one hand on the door and the other on the steering wheel. Defendant fled on foot, but Reece was able to identify him because, while he ran, defendant twice turned to look at his pursuers. The defense established that the officer's report did not mention seeing defendant partially seated in the car at the end of the chase.

Kallick testified he saw his car in motion just before it stopped. The driver was the only occupant, and Kallick identified defendant as the man who looked back at the police car when running from the Lincoln.

Defendant eluded Reece, but was arrested nearby a short time later by officers responding to Reece's radio messages. At the scene of the arrest, one of the officers gave Reece a key ring with about 23 keys on it. Returning to the Lincoln, Reece and Kallick saw that the door lock had been pulled out, but the ignition lock was intact. One of the 23 keys on the ring unlocked the ignition of the Lincoln. When they got to the police station, Reece gave Kallick the key that started the Lincoln and gave the other keys to defendant. According to Reece, defendant accepted the keys and admitted they were his. However, the trial court struck the testimony about defendant's verbal admission to Reece on the grounds that there was a violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

After Reece finished testifying on September 4, 1979, the trial was continued until September 14, when Kallick testified about an incriminating statement made to him by defendant. Although the admission

allegedly made to Kallick was not referred to in the State's answer to the defendant's motion for discovery, information about this testimony was disclosed to defense counsel just before trial commenced, on September 4, and also during the State's opening statement. Kallick testified that, at the police station, he asked defendant if he made the ignition key himself, and defendant replied no, that his partner made the key. Defense counsel did not object to this testimony.

Defendant testified that on September 27, 1978, he drove to a furniture store at 6535 S. Halsted to pay a bill. When he returned to his car it wouldn't start, so defendant walked to his uncle's residence, at 526 W. 66th Place, to get help. While defendant was on the front porch, waiting for his uncle to arrive, a Lincoln pulled up and the driver ran away. Defendant said he walked over to the car, pushed the door closed, and looked inside. When a police car pulled up, defendant said he concluded he was in the wrong place at the wrong time, so he ran away. But, he was arrested nearby a short time later.

According to defendant, a key ring was taken from him at the police station and returned to him after one key had been removed. Defendant admitted that Kallick questioned him about the theft of the Lincoln, but defendant testified he merely shook his head and did not answer.

Rochelle Moore, who lived with defendant at the time of his arrest, testified she posted bond for him the day after the arrest and drove him to his car at 65th and Halsted. Defendant's car would not start, and they had to use battery cables to get it going.

OPINION

Defendant contends that he was denied a fair trial because the State did not disclose, until just before trial commenced, that defendant allegedly made incriminating statements to State witnesses.

■■■ We are concerned with the number of cases in which the State does not disclose, until just before or during trial, that the defendant allegedly made incriminating statements to State witnesses. In such cases, the focus of the trial court's inquiry should be on whether the State failed to fulfill its obligations under the discovery provisions. Compliance with the discovery provisions is mandatory, and is accomplished only if the State notified the defense of the alleged incriminating statement promptly after finding the evidence, and if the State used due diligence to ensure that it would be aware of such testimony. (*People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339; Ill. Rev. Stat. 1979, ch. 38, par. 114—10, and ch. 110A, pars. 412(a)(ii), 412(d), 412(f), 415(b) and 415(g).) Since the information about when such testimony was obtained, or could reasonably have been discovered, is uniquely within the knowledge of the State, the State has the burden of showing that it promptly disclosed the evidence,

and that it used due diligence. (*Cf. People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543, (burden is on the State to show good faith when it loses evidence which the defense was entitled to obtain).) If the trial court concludes that the State did not disclose such testimony promptly after the State knew or should have known of the evidence, the court must consider whether a sanction, such as suppression, is appropriate, or whether the violation can be cured by a continuance. Ill. Rev. Stat. 1979, ch. 110A, par. 415(g).

■■ The State's obligations under the discovery provisions are rendered illusory when courts merely conclude that the defense could do nothing to counter testimony about alleged incriminating statements, and that, therefore, the discovery rules are not violated by failure to disclose such evidence. (See, *e.g., People v. Cowherd* (1980), 80 Ill. App. 3d 346, 399 N.E.2d 672.) The discovery provisions were designed to insure fairness, not to merely present a mirage of fairness. "[W]henever and wherever the State or its criminal justice agencies are guilty of misconduct, malfeasance or misfeasance in its discovery obligations, the sanctions of the trial court or this court should be swift, certain, and appropriate." *People v. Pinchott* (1977), 55 Ill. App. 3d 593, 597, 370 N.E.2d 1289.

■■ Since, in the present case, the trial court suppressed the statement allegedly made to Officer Reece, the remaining basis for the claimed violation of Rule 412(a)(ii) is the statement allegedly made to Kallick. Existence of this evidence was disclosed to defense counsel on September 4, both before trial and in the State's opening statement. But, when Kallick testified on September 14, defense counsel did not object that the testimony violated Rule 412. This is understandable because, although the defense did not request a continuance for the purpose of responding to the newly disclosed evidence, there was a continuance in the trial from September 4, when disclosure was made, to September 14, when Kallick testified. Under these circumstances, failure to object to Kallick's testimony constitutes waiver. *People v. Embry* (1973), 12 Ill. App. 3d 332, 297 N.E.2d 604.

■■ Defendant also contends that the State's evidence is not sufficient to establish that he exerted control over Kallick's Lincoln. There is no dispute that defendant ran from the Lincoln when the police car arrived, but, because exclusive and unexplained possession of recently stolen property gives rise to a permissible inference of guilt (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19), an important question is whether defendant was in possession of the car. Reece testified that he saw defendant partially seated in the Lincoln, with one hand on the steering wheel and one hand on the door. Kallick testified that he saw the Lincoln just before it stopped, and that defendant was the man who ran from the car. Furthermore, the police recovered a key which fit the Lincoln's

ignition, and there was testimony that defendant: (1) impliedly acknowledged that the key ring on which the ignition key was found was his, and (2) admitted that a partner of his made the ignition key. This evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

The discrepancies in the testimony of the State witnesses, and the impeachment offered by the defense, does not, in this case, make the State's evidence so incredible, unreliable, improbable, or unreasonable as to create a reasonable doubt.

For the preceding reasons, defendant's conviction is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.