THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEWIS BROWN, Defendant-Appellant.

First District (5th Division)    No. 80-3003

Opinion filed May 28, 1982.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Raymond Brogan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was convicted in a jury trial of rape and sentenced to 12 years. On appeal, he contends that (1) the trial court erred (a) in allowing the State to use in rebuttal for impeachment purposes a statement of defendant made to an assistant State's Attorney (the assistant) and not given to defendant until the day before the assistant was to testify and (b) in admitting evidence of ammunition recovered from defendant's apartment when he was arrested; (2) he was denied a fair trial by the State's withholding until trial information concerning recovery of the gun allegedly used during the offense; and (3) the sentence was improperly based on the trial court's belief that defendant had committed attempt murder. A detailed statement of facts is unnecessary here, inasmuch as the issue of reasonable doubt is not raised, and only those facts bearing directly upon the questions presented will be discussed.

At trial, the victim testified that defendant knocked at her door and asked to use the telephone; that after making a call, he grabbed her by the neck, pulled out a gun, pointed it at her head and pulled the trigger, but the gun did not fire; that he clicked the gun again and put it back into his pocket; that defendant told her not to scream or he would kill her; that on two separate occasions, he pushed her to the couch and raped her; and that, after defendant left, she called and told both her cousin and the police about the occurrence.

Asserting the defense of consent to the alleged offense,[1] defendant testified that he lived with his girl friend in a neighboring apartment in the same building as the victim; that on the night in question, the victim knocked on the door of his apartment; that he and the victim had an argument, and he pushed her back to her apartment; that the victim returned, and he again pushed her back to her apartment where he made a telephone call and then sat next to her on the couch; that they had sexual intercourse twice; and that he had sexual intercourse with the victim five or six times during the previous year.

OPINION

We first consider defendant's contention that the trial court improperly allowed in evidence on rebuttal a statement of defendant which had been barred in the State's case in chief. In particular, he refers to a statement he made to the assistant after being arrested and advised of his rights, to the effect that he threw a gun out of his apartment window before the police arrived. He maintains that contrary to the discovery rule

---

[1] Defendant was charged by information with rape and armed violence, but the latter count was *nolle prossed* prior to trial.

(73 Ill. 2d R. 412(a)), testimony as to the statement was improperly admitted on rebuttal because defense counsel was not informed of it until the day before the assistant was to testify and because the substance of the statement was not brought out until the State's cross-examination of defendant. It is our belief, however, that the trial court acted within its discretion in admitting the statement as rebuttal evidence of a prior inconsistent statement which impeached defendant's direct testimony.

The record reveals that on direct examination, defendant denied pointing a gun at the victim, and his counsel avoided reference to any conversation defendant may have had with the assistant. However, he did question defendant about a gun as follows:

> "[Defense Counsel]: At the time of your arrest did you have any guns inside your apartment?
>
> [Defendant]: No.
>
> *  *  *
>
> [Defense Counsel]: At any time on [the night in question]—you've seen the gun introduced in the trial today?
>
> [Defendant]: Yes.
>
> Q: At any time during that night did you take that gun and point it at anyone?
>
> A: No.
>
> Q: Did you take that gun and point it at [the victim]?
>
> A: No."

Thereafter, defendant was cross-examined concerning his statement to the assistant and stated that he did not recall having a gun and throwing it out the window. The State then moved to allow in rebuttal the assistant's testimony as to defendant's statement about the gun. After defendant's objection was overruled, there was a stipulation as to what the assistant's testimony would have been concerning the statement.

The basis of defendant's contention is that the absolute exclusion of his statement was the proper sanction because of the State's violation of the discovery rule. In support thereof, he relies primarily upon *People v. Thompson* (1974), 18 Ill. App. 3d 613, 310 N.E.2d 504, and *People v. Miles* (1980), 82 Ill. App. 3d 922, 403 N.E.2d 587.

In *Thompson*, defendant filed a pretrial motion to produce a confession under section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 114—10). The State responded that defendant had made no statement concerning his participation in the crime. At trial, however, the State informed the court that it wished to present a confession of defendant, and it was ruled that the statement would be admitted only for impeachment if defendant testified. Thereafter, the State presented a rebuttal witness who testified as to the contents of

defendant's oral statement. This testimony was exculpatory but inconsistent with defendant's testimony at trial. In reversing the conviction, the court held that section 114—10 of the Code of Criminal Procedure of 1963 requires the production prior to trial of the confession of an accused and that, if the State failed to so tender it to the defense, the confession was inadmissible unless the court was satisfied that the State was unaware of such confession and could not have learned of it prior to trial in the exercise of due diligence.

█■ In the present case, however, it is apparent that the statement in question was not a confession which is " 'a voluntary acknowledgement of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred.' " (*People v. Hanson* (1977), 44 Ill. App. 3d 977, 984, 359 N.E.2d 188, 194, quoting *People v. Stanton* (1959), 16 Ill. 2d 459, 466, 158 N.E.2d 47, 51.) Here, section 114—10 does not apply since defendant's statement that he threw a gun out of his window was not an acknowledgement of guilt for the crime of rape but was, at most, a declaration of an independent fact from which guilt could be inferred.

For similar reasons, we believe *Miles* to be inapposite. There, the issue involved compliance with discovery requirements in providing defendant with a police report. The report referred to by the State reflected defendant's statement that she stabbed the victim during an argument, but a police officer testified on cross-examination that defendant said she "killed the m_____ f_____ because he was stupid." That statement was repeated by another officer on rebuttal for the State. It was held that the State's failure to comply with the disclosure requirements of Supreme Court Rule 412(a)(ii) (73 Ill. 2d R. 412(a)(ii)) and of section 114—10(a) and (c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—10(a), (c)) denied defendant a fair trial. The court noted that Rule 412(a)(ii) requires the State to disclose all statements of the accused known to it and that compliance with the discovery rule and section 114—10 is mandatory. The court also noted that defendant's statement that she "killed the m_____ f_____ because he was stupid" was "radically different" from the substance of the statement in the police report. (82 Ill. App. 3d 922, 927, 403 N.E.2d 587, 592.) Thus, the State's response failed to satisfy the supreme court rule, since the portion of the statement most prejudicial to defendant was not disclosed, nor was a list provided of specific witnesses to the statement, as required by the rule and the statute. The court also pointed out that the exercise of due diligence by the State would have brought the statement to its attention and that it is the State's duty to ensure the proper flow of information. Finally, in rejecting the State's contention that the statement was proper rebuttal to defendant's

denial of it, the *Miles* court held that the State could not take advantage of its own discovery violation through use of rebuttal testimony, since that violation precipitated defendant's denial.

We believe *Miles* is distinguishable, however, because it involved failure to disclose an oral confession prior to trial, which as we have noted is not the issue before us. Moreover, the statement here lacks the inflammatory quality of the statement in *Miles*, and the jury was exposed to it only once and then by way of a stipulation. Finally, defendant in *Miles* contended that guilt was not proved beyond a reasonable doubt; whereas, no such contention is made here, and we believe that the strong evidence of defendant's guilt further attenuates any prejudice that may have resulted from the statement in question. Thus, even if the trial court erred with respect to the admission of the statement, reversal would not be warranted in view of the evidence clearly establishing defendant's guilt. See *People v. Scott* (1972), 52 Ill. 2d 432, 288 N.E.2d 478, *cert. denied* (1973), 410 U.S. 941, 35 L. Ed. 2d 607, 93 S. Ct. 1406; *People v. Willis* (1976), 43 Ill. App. 3d 535, 357 N.E.2d 576.

■■ For additional reasons, we believe it was not error to admit the statement of defendant on rebutal as, first of all, it was properly impeaching. Although it is impermissible to cross-examine a witness on irrelevant or collateral matters for the purpose of contradiction, cross-examination which is limited to matters brought out on direct examination is proper. (*People v. Matthews* (1959), 18 Ill. 2d 164, 163 N.E.2d 469; *People v. Sisti* (1967), 87 Ill. App. 2d 107, 230 N.E.2d 500.) Here, defendant on direct examination denied that he had any guns in his apartment or that he pointed the gun introduced in evidence at anyone, including the victim. On cross-examination, he was asked about the statement he made to the assistant concerning a gun he threw out of his apartment window minutes before the police arrived to arrest him. Thus, in our view, the State's question was restricted to a matter brought out on direct examination, and the statement to the assistant allowed as rebuttal evidence was similarly confined.

■■ Secondly, we are of the belief that the sanction imposed by the trial court for the State's failure to disclose defendant's statement was appropriate under the circumstances. Supreme Court Rule 412(a)(ii) requires the State upon written motion of defense counsel to disclose any written or recorded statement and the substance of any oral statement of the accused and a list of witnesses to such statements. (73 Ill. 2d R. 412(a)(ii).) Compliance with this rule is mandatory for the purpose of avoiding surprise, unfairness, and inadequate preparation to the defendant and is excused only if the State was unaware of the existence of the statement prior to trial and could not have become aware of it in the exercise of due diligence. (*People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339.)

It does not follow, however, that noncompliance necessarily requires the exclusion of the undisclosed evidence, since trial courts have broad discretion in fashioning sanctions for violations of discovery (*People v. Lewis* (1981), 95 Ill. App. 3d 82, 419 N.E.2d 641), and a noncompliance with discovery does not necessitate reversal absent a showing of prejudice to defendant (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203). In this regard, Supreme Court Rule 415(g)(i) (73 Ill. 2d R. 415(g)(i)) provides:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances."

It has been held that sanctions for discovery violations must be proportionate to the magnitude of the violation (*People v. Forsythe* (1980), 84 Ill. App. 3d 643, 406 N.E.2d 58; also see *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682); that the imposition of such sanctions must not encroach upon a fair trial (*People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274); that the purpose of discovery sanctions is to compel compliance but not to punish a party for oversight or errors of an attorney (*People v. Anderson* (1980), 80 Ill. App. 3d 1018, 400 N.E.2d 675); and that sanctions should be designed to increase the evidence available to all parties (*People v. Jackson* (1977), 48 Ill. App. 3d 769, 363 N.E.2d 392).

Our research reveals no case specifically holding that statements untimely provided, such as the one here, may not be used on rebuttal to impeach defendant's testimony. Nonetheless, defendant claims that because his defense was consent and the outcome of the case depended largely upon the credibility of the victim's testimony relative to his, introduction of the statement damages his credibility. We believe, however, that any prejudice resulting from this statement was insubstantial. The testimony of the victim was clear and consistent and was by itself sufficient to establish defendant's guilt (see *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285), and it was corroborated by that of her cousin and of a police officer to the effect that she complained promptly of being raped (see *People v. Edmond* (1979), 76 Ill. App. 3d 540, 395 N.E.2d 106). It was further supported by evidence of her physical condition following the incident. The responding police officer testified that he found the victim highly excited, crying and trembling, and that her tongue was lacerated.

Defendant's credibility, by contrast, was weakened by other testimony. When defendant was arrested, he stated that he had been in bed all evening and had not seen the victim, but at trial he testified to being in her

apartment and having sexual intercourse with her. Defendant also claimed that after the police broke down his door, he ran into the hallway from his bedroom; however, Officer O'Brien testified that when the police broke in, defendant was sitting in a chair. Furthermore, defendant told the arresting officers that he had been in bed for several hours, yet he was wearing work boots that were fully laced up at the time of his arrest. Finally, defendant testified that he did not hear the police breaking down his door with a sledgehammer, but Officer O'Brien testified that he heard footsteps in the apartment during the five minutes it took to break down the door. Thus, it is apparent that defendant's credibility did not depend upon the isolated prior inconsistent statement concerning the gun and that his guilt was clearly established through all the facts and circumstances in evidence.

■ Defendant also maintains that he was unfairly surprised by the admission of his statement. While courts should not speculate as to whether a defendant was unfairly surprised by a discovery violation (see *People v. Williams* (1981), 96 Ill. App. 3d 250, 421 N.E.2d 248), in the case before us speculation is unnecessary. Not only did defendant fail to request a continuance to interview the assistant State's Attorney after learning the statement would be used in rebuttal, but he also does not now indicate what he would have accomplished with a continuance. Defendant also suggested at trial that the assistant's testimony be admitted by stipulation, thereby foregoing the opportunity to cross-examine her. Surprise is not shown where an accused fails to take advantage of an opportunity to interview a witness and to seek a continuance for preparation purposes (*People v. Clements* (1980), 80 Ill. App. 3d 821, 400 N.E.2d 483; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126; also see *People v. Cowherd* (1980), 80 Ill. App. 3d 346, 399 N.E.2d 672 (holding that it was the nature of the evidence of defendant's oral confession rather than the surprise to defendant which damaged his case and that little advantage would have been gained by defendant had he been advised of such statement earlier).) Moreover, in view of our finding that defendant suffered no unfair prejudice from the nondisclosure of the statement, the assertion of surprise does not warrant reversal.

Finally, we think the situation presented here is analogous to that in *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643. In *Harris*, it was held that a statement whose trustworthiness satisfies legal standards may be used for impeachment purposes to attack the credibility of a defendant's trial testimony, even though such statement is inadmissible against a defendant in the State's case-in-chief for failure to comply with the procedural safeguards of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Moreover, it has been held in this State that statements voluntarily made by a defendant at a coroner's

inquest may be used for impeachment at a trial for murder irrespective of the sufficiency of *Miranda* warnings (*People v. Byers* (1972), 50 Ill. 2d 210, 278 N.E.2d 65), although it is improper to impeach a defendant through the use of an unlawfully obtained confession (*People v. Luna* (1967), 37 Ill. 2d 299, 226 N.E.2d 586).

■■ Similarly, a trial court may, as an appropriate discovery sanction, exclude evidence from the State's case-in-chief. (*People v. Musgray* (1976), 37 Ill. App. 3d 48, 344 N.E.2d 708; Ill. Ann. Stat., ch. 110A, par. 415(g)(i), Committee Comments, at 709 (Smith-Hurd 1976).) Thus, just as *Miranda* requires that procedural safeguards be observed in order to secure the fifth amendment's privilege against self-incrimination, so also may the State be precluded from presenting evidence in its case in chief which is improperly withheld during discovery, for the ultimate purpose of such sanction is similarly inspired by the guarantees of a fair trial. (See *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274.) On the other hand, in *Walder v. United States* (1954), 347 U.S. 62, 65, 98 L. Ed. 503, 507, 74 S. Ct. 354, 356, defendant's assertion on direct examination that he had never possessed narcotics opened the door, for purposes of attacking his credibility, to evidence of heroin unlawfully seized in an earlier proceeding. The court stated:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. * * * [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

In the present case, the total exclusion of defendant's voluntary statement to the assistant would permit him to shield himself against exposure to the possibility at trial that his statements were contradictory or untrue. Such result obstructs the jury's search for truth and defeats the ends of discovery. (See *People v. Caliendo* (1980), 84 Ill. App. 3d 987, 405 N.E.2d 1133.) We conclude, therefore, that the trial court did not abuse its discretion with respect to the sanction imposed.

Defendant next posits that the trial court improperly admitted several shotgun shells and .38-caliber bullets seized from his apartment. He maintains that they were irrelevant to the crime charged since there was no evidence he had used them or any weapon capable of firing them during the alleged offense; consequently, they prejudiced him before the jury by making him appear to be "an evil man with several weapons." We disagree.

■■ Defendant bases his position on *People v. Suerth* (1981), 97 Ill. App.

3d 1005, 423 N.E.2d 1185, but we believe that case is distinguishable. In *Suerth*, a conviction for involuntary manslaughter and armed violence was reversed, *inter alia*, because of the introduction of a shotgun which was seized at the time of the arrest but not used to commit the crime. The court held that error occurred when the jury viewed the shotgun and when the prosecutor "paraded" it before them. (97 Ill. App. 3d 1005, 1013, 423 N.E.2d 1185, 1192.) Here, by contrast, the State made no such inflammatory display of ammunition. Moreover, defense counsel stated that he did not object to the evidence being given to the jury for viewing. Defendant's reliance on *Suerth* is therefore misplaced, and we conclude that there was no prejudicial error in the admission of the ammunition.

Defendant further contends that the State's failure to reveal until trial the true circumstances concerning the recovery of the gun used in the alleged offense denied him a fair trial. In this regard, the State responded to defendant's motion for discovery by submitting, *inter alia*, the report of Officer Steve Horkovy, which stated in substance that Horkovy personally recovered the gun from an alley near the 18th District police station following an anonymous telephone call. However, at trial Horkovy testified that the gun was brought to the station by an unidentified middle-aged black woman, address unknown, who said she recovered the gun from the grounds of the apartment building where defendant and the victim lived. Defendant maintains that he was hindered in the preparation of his defense since he could have searched for this woman if he had learned prior to trial how the evidence was recovered and could have expanded upon the fact that the evidence was moved from its original location by the woman.

Although defendant objected to this testimony and moved for a mistrial, it appears he has waived this issue for review since he failed to request a continuance at trial in order to search for the witness. (See *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321.) Assuming no waiver, however, we find the contention to be without merit. First of all, defendant's reliance on *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, is unavailing. There, it was held that suppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution. Here, the record does not indicate that the evidence concerning recovery of the gun, as related by Harkovy, was suppressed by the State prior to trial, nor can it reasonably be supposed that the evidence was favorable to the defendant. Whether the gun was found by the officer himself or by the woman in question has little bearing upon the guilt or innocence of defendant for the crime of rape. *Cf. People v. Wilken* (1980), 89 Ill. App. 3d 1124, 412 N.E.2d 1071.

■ Furthermore, it is apparent that the officer's testimony was prejudicial to the State, rather than to defendant. The officer admitted testifying to a different set of facts than was contained in the report given to defendant and to his failure to file a corrected report. In light of the extensive cross-examination of Horkovy with respect to recovery of the weapon, we believe that any possible discovery violation by the State in this matter was harmless error (see *People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533), and we note also that this impeaching testimony was used to advantage by defendant in closing argument. Moreover, we think it speculative for defendant to assert that the woman could be located based on the officer's general description of her and that he could have "more fully prepared and exploited" the discrepancy in the officer's testimony than was done at trial. Prejudice from an alleged discovery violation "can not be demonstrated merely by speculation or conjecture." (*People v. Wilken* (1980), 89 Ill. App. 3d 1124, 1128-29, 412 N.E.2d 1071, 1074.) We conclude, therefore, that defendant was not denied a fair trial on the grounds asserted.

■■ Finally, defendant contends that he was improperly sentenced for attempt murder on the basis of the trial court's belief that defendant would have been tried for murder had the gun used during the incident not misfired. In this regard, the trial court stated at the sentencing hearing: "[Y]ou clicked the gun twice and it misfired and you could be up here for murder rather than rape." The first part of the statement—that the gun was clicked twice and misfired—reflects accurate consideration of the evidence in sentencing defendant. The second part of the statement was, in our view, an extemporaneous remark expressing shock as to the nature of defendant's conduct, and the phrasing of the remark in hypothetical terms indicates to us that the trial court, in sentencing defendant, did not as contended by defendant consider that he had committed attempt murder.

For the reasons stated, the conviction and sentence are affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.